UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VENETIAN STONE WORKS, LLC, a Washington Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>MARMO MECCANICA, S.p.A. an Italian Corporation,<br><br>Defendant. | C09-1497Z<br><br>ORDER |

THIS MATTER comes before the Court on defendant's motion for partial summary judgment, docket no. 14. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court GRANTS the motion in part as to plaintiff's claim under Washington's Consumer Protection Act (the "CPA"), DEFERS the motion in part as to plaintiff's prayer for consequential damages, and otherwise DENIES the motion.

In this action, plaintiff Venetian Stone Works, LLC asserts three claims, namely (i) fraudulent inducement to enter into contract, (ii) violation of Article 2 of the Uniform Commercial Code, RCW Chapter 62A.2 (Sales), and (iii) violation of the CPA, against defendant Marmo Meccanica S.p.A., an Italian corporation, in connection with the purchase and sale of a $120,000 rectilinear stone polishing machine denominated as the "LTV 621." Defendant now moves for summary judgment on the fraudulent inducement claim on

ORDER - 1

1  grounds that plaintiff cannot show (i) defendant misrepresented an existing fact, or
2  (ii) plaintiff justifiably relied on any alleged false statements.  This portion of defendant's
3  motion for partial summary judgment is DENIED because genuine issues of material fact
4  exist.  *See* Fed. R. Civ. P. 56(a) (2010).

5  As to plaintiff's CPA claim, defendant moves for summary judgment based on
6  plaintiff's inability to prove that the alleged unfair or deceptive act or practice "affects the
7  public interest."  *See* <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105
8  Wn.2d 778, 719 P.2d 531 (1986) (outlining the elements of a private CPA claim).  Because
9  defendant's motion seeks summary judgment, plaintiff, as the non-moving party, is entitled
10 to have its evidence "believed" and to have all "justifiable inferences" drawn in its favor.
11 *See* <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  Applying this standard, the
12 Court concludes that summary judgment is warranted because "the record taken as a whole
13 could not lead a rational trier of fact to find for" plaintiff on the public interest prong of its
14 CPA claim.  *See* <u>Miller v. Glenn Miller Prods., Inc.</u>, 454 F.3d 975, 988 (9th Cir. 2006); *see*
15 *also* <u>Beard v. Banks</u>, 548 U.S. 521, 529 (2006).

16 "Ordinarily, a breach of a private contract affecting no one but the parties to the
17 contract is not an act or practice affecting the public interest."  <u>Hangman Ridge</u>, 105 Wn.2d
18 at 790.  When additional plaintiffs have been or will likely be injured in the same fashion,
19 however, the private dispute might transform into one that affects the public interest.  *Id.*
20 In assessing whether such situation is present, the Court must consider the following factors:
21 (i) whether the alleged unfair or deceptive acts were committed in the course of the
22 defendant's business; (ii) whether the defendant advertised to the public in general;
23 (iii) whether the defendant actively solicited the plaintiff, indicating potential solicitation of
24 others; and (iv) whether the plaintiff and the defendant occupy unequal bargaining positions.
25 *Id.* at 790-91.

26

ORDER - 2

In this case, plaintiff and defendant began the negotiations that culminated in plaintiff's purchase of defendant's LTV 621 machine at a trade show held in Las Vegas, Nevada. Plaintiff asserts that the representations made by defendant during the trade show were false or misleading and that, because the statements were made in a public forum of this nature, they gave rise to the requisite "public interest." Plaintiff, however, cites no authority standing for the proposition that discussions at a trade show convert a private transaction into one affecting the public interest.[1] In addition, plaintiff concedes that defendant does not widely distribute these machines -- plaintiff is one of only two or three companies in the United States that has purchased the LTV 621, *see* Response at 6 (docket no. 24) -- and plaintiff identifies no other sale that resulted from the trade show at issue. Moreover, plaintiff fails to explain how conversations at a trade show in Nevada affect the public interest in Washington, or how Washington's CPA would apply to such activities.

With respect to the factors outlined in *Hangman Ridge*, plaintiff's arguments are equally unpersuasive. Although defendant engaged in advertising by participating in the trade show, the record reflects that plaintiff had researched various manufacturers in advance of the trade show, had already decided upon the style of equipment it would purchase, and had approached defendant's booth to ask specific questions about the LTV 621. Nothing about these events suggests that defendant "actively solicited" plaintiff or is likely to actively

---

[1] Indeed, of the four cases on which plaintiff relies, three held that a public interest had not been shown. *Hangman Ridge*, 105 Wn.2d at 794; *see Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217 (9th Cir. 2005); *Abboud's McDonald's, LLC v. McDonald's Corp.*, 2005 WL 2656591 (W.D. Wash.), *aff'd*, 2006 WL 1877247 (9th Cir.). The other case cited by plaintiff did not address the "public interest" element of a private CPA claim, but rather dealt with the "unfair or deceptive" prong, which requires a showing that the conduct at issue had "a tendency or capacity to deceive a substantial portion of the public." *Potter v. Wilbur-Ellis Co.*, 62 Wn. App. 318, 327-28, 814 P.2d 670 (1991). Not only does *Potter* concern an entirely different CPA standard, it is factually distinguishable. In *Potter*, in connection with their lawn care business, the plaintiffs purchased herbicides from the defendant, which the plaintiffs used on approximately 900 lawns, most or all of which were damaged as a result. Given the nature of the plaintiffs' work and the defendant's product, the allegedly deceptive statements made by the defendant to the plaintiffs had a significant domino effect. In contrast, in the case now before the Court, plaintiff makes no contention that its use of defendant's LTV 621 has caused harm to others or that the alleged misrepresentations had "trickle-down" consequences similar to those evident in *Potter*.

ORDER - 3

solicit "members of the public at large" to purchase stone polishing machines. *See Abboud's*, 2005 WL 2656591 at *6. In addition, although defendant is a larger, more established company than plaintiff, in the context of the trade show, their bargaining positions were comparable, with plaintiff having easy access to, and ample opportunities to confer with, defendant's competitors. The record reflects "nothing more than a private dispute." *Hambleton Bros.*, 397 F.3d at 1235.

With regard to the final subject of defendant's motion, defendant does not dispute that consequential damages are available as a remedy under Article 2 of the Uniform Commercial Code ("UCC"),[2] but contends that plaintiff has not provided a sufficient factual basis to support an award of lost profits. In response, plaintiff asserts that, because the LTV 621 did not operate as anticipated, plaintiff was "rendered unable to follow its plan to bid on [high-volume] work projects," and that its "probable loss" can be computed from the "factual data provided . . . during discovery." Response at 22 (docket no. 24). The parties' dispute over the adequacy of plaintiff's financial evidence is common:

> Practically all suits to recover lost profits involve the issue of whether they have been demonstrated with reasonable certainty. What is meant by "reasonable certainty" is difficult to pinpoint. Its outer edges seem to be, on one side, the rule that such damages need not be shown with mathematical certainty, and on the other, they must not be speculative.

Richard Cosway, *Sales – A Comparison of the Law in Washington and the Uniform Commercial Code*, 36 WASH. L. REV. 440, 467 n.98 (1961). Plaintiff has not informed the Court what "factual data" it disclosed in discovery, and thus, its current showing concerning lost profits rests entirely on speculation.

---

[2] *See* RCW 62A.2-714(3); *see also Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage Co.*, 709 F.2d 427, 432-33 (6th Cir. 1983) (applying Washington law). Under the UCC, consequential damages include "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." RCW 62A.2-715(2)(a). In this case, what defendant as seller had reason to know at the time of contracting constitutes a genuine issue of material fact.

ORDER - 4

The Court DEFERS ruling on whether plaintiff can present the requisite evidence of lost profits and DIRECTS plaintiff to file an offer of proof by December 27, 2010, concerning the nature and extent of any consequential damages. The offer of proof shall identify all witnesses on the subject and describe with particularity their expected testimony. The offer of proof shall be accompanied by all exhibits plaintiff intends to proffer in support of its claim for lost profits. In addition, the offer of proof shall set forth in detail the "factual data" given to defendant that plaintiff contends "furnishes 'a basis for computation of probable loss.'" Response at 22 (docket no. 24). Defendant may file objections to the offer of proof by January 17, 2011. Counsel shall be prepared to discuss this subject at the Pretrial Conference set for January 28, 2011.

For the foregoing reasons, defendant's motion for partial summary judgment, docket no. 14, is GRANTED IN PART, DENIED IN PART, and DEFERRED IN PART. Plaintiff's claim for violation of the CPA, *see* Complaint at § C, ¶¶ 4.13-4.19 (docket no. 1), is DISMISSED with prejudice. The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

DATED this 8th day of December, 2010.

                                            Thomas S. Zilly
                                            United States District Judge